and we'll turn next to 112 Holdings v. Sentinel Insurance Company, 2180, and I understand that counsel for the appellant is available by phone? Yes, good morning, Your Honor. I'm sorry, John Goloshevsky on behalf of the appellant. Hold on a second, Mr. Goloshevsky. What? Thank you very much. All right. Counsel for the appellee is here. So, Mr. Goloshevsky, why don't you proceed? And you reserve no time for rebuttal. I'd like to make a request, Your Honor, if I may withhold three minutes for rebuttal. Granted. Okay. Thank you. Good morning. As I mentioned, this is John Goloshevsky on behalf of the appellant. At the outset, I profusely apologize to the court for not being there in person on a hectic morning. As to the case of Boiled Down, the issue on this appeal is whether the phrase direct physical loss as drafted but left undefined by Sentinel is reasonably susceptible to more than one interpretation. That is the only issue that we're here to discuss. Guy Hefner is an art gallery in Manhattan, which unquestionably suffered a loss of the use of its property when certain government shutdown orders were issued in March 2020. Counselor, you have a limited amount of time. I think we're very familiar with the facts of this case. So I think we can go to the essence of the argument, and I would just like you to answer why, how the direct physical loss or physical damage can both at the same time be a loss of business and not be the result of, when you're talking about business loss, and at the same time not be the predicate of the loss of business. You follow me? I don't. If you read the entire policy, you see that the direct physical loss or physical damage is the predicate to subsequent insurance risks, including the loss of business. You can't have a loss of business independently of a risk of direct physical loss or physical damage. Agreed. It's caused by a direct physical loss and physical damage. You would agree with that, right? A risk of direct physical loss or physical damage, yes. Yes. So how can it be the cause and at the same time the fact of the loss? In other words, you're saying the physical loss occurred when the business could no longer function. But at that point, there had been no predicate, direct physical loss or physical damage. We can see there has been no physical damage, but the loss that we are concerned with is the loss of the use of the property as it was intended to be used. The purpose of the gallery, which is property owned by Guy Hefner, the purpose of the gallery is to exhibit and to sell art. How is the cause of that the direct physical loss is what I'm saying? Because you say that the loss of business, you've agreed that the loss due to lost business has a predicate, which is physical damage or loss. And so you're trying to say both of them are simultaneous, at least in your argument, as far as I can see. Well, I think it's slightly different. The issue is covered property that has a risk of direct physical loss. Our position is that the outbreak of covid-19 and the government orders that emanated from them were indeed a risk of direct physical loss and indeed caused that direct physical loss by shutting down the gallery and various other businesses. Our quarrel with the district court is in the district court saying that there must be some physical harm. That's exactly what the district court said. There has to be a physical harm before the physical loss can be triggered. That is our quarrel. It is a very narrow argument. But I thought I thought I thought I thought your position was that the limitation on the use of the gallery was both direct physical loss and the suspension of its operations. Is that is that accurate? The suspension of its operation caused the direct physical loss because the direct physical loss was the inability to use property that putting the policy, turning the policy on its head. Because when you read the policy, the direct physical loss is the cause of whatever suspension of operations occurs. And that's obvious from, you know, the basic the basic kind of nature of the risks here, which might be fire. It might be damaged to the building of one sort or another, a earthquake or something of that sort that causes a direct physical loss. And as a result, the suspension of business operations. But you're saying you're saying suspension of business operations and direct physical loss are the same. And I don't know. And I don't know that necessarily offends the policy. If you read the policy section, a five Q founded J.A. Eighty four. Quote, this insurance is intended to apply to the actual loss of business income. You sustain when access to your scheduled premises is specifically prohibited by order of a civil authority as a direct result of a covered cause of loss to property. I'm sorry to go ahead. Keep answering. Of course, the the risk when the covid-19 outbreak occurred and the attendant civil authority orders that followed it, which were necessary in order to try to stem the tide of the outbreak that caused the loss of Guy Hefner's use of his property. You we can certainly agree that the the the orders of the governor caused a business loss. I don't think anybody's quarreling with that. But the orders of the governor certainly themselves do not constitute direct damage or loss to the to the property. That's a regulatory move by the by this by the state. And, you know, there are all sorts of reasons why regulations could come in that could cause business losses. You know, the rules may change about the number of people who can occupy a building or certain certain regulations of that sort. And that that obviously is not covered by this risk. Regulatory cost on the property because of this regulation by a government authority is not covered by this. Is it? It is not. But in those hypotheticals, Guy Hefner is still able to use the gallery for the purpose in which it was intended, which was to exhibit and sell art. The situation he had now is that he was forbidden from using that gallery. Counsel, may I ask a slightly different question? Let me just be quite straight with you. I don't read the policy the way you do. I think the policy to me, if I were to be deciding, is very clear that you are not covered. On the other hand, there is no decision directly by the New York Court of Appeals. There is this very powerful decision in Roundabout. This is a very big issue that comes up and you ask for certification. And as you may know, I'm big on certification and letting the New York Court of Appeals speak to its things. On the other hand, in this case, there are many, many of these cases. This is an issue which has to be settled and we have to be gotten over. So why isn't this a case where we really have to decide ourselves as best we can rather than sending it to the New York Court of Appeals? Even though I would love to have the New York Court of Appeals tell me if they want to read this in a way very different from the way I would read it. So I'd like you to address that. Sure, and thank you, Your Honor. And I understand the interpretation of the district court. I understand Your Honor's position on it. We don't disagree that that is one possible interpretation. Our quarrel is that that is the only interpretation. That's the first point. The reason that we believe certification is appropriate in this case is because we believe Roundabout has been misapplied. Roundabout has been applied in this case and in various other cases to stand for the proposition basically that absent physical harm or physical damage, and the district court used the term physical harm, there is no coverage. That's not what Roundabout says. Roundabout says something different. Roundabout uses the hypothetical where there is a lost theater prop that caused a missed theater performance. And the court in the first department in Roundabout said, well, that would be a covered loss. Okay. This idea that there is a prerequisite, a harm, a physical harm prerequisite, I believe is a misreading, a slight but very important in these cases, misreading of Roundabout. And such the certification to the Court of Appeals would allow them, and Your Honor is absolutely correct, this does not exist in a vacuum. There are many of these cases. It is a very important issue, and the Court of Appeals can decide definitively exactly what Roundabout means, and if in fact Roundabout properly articulates the law of New York. Well, I don't think the defendant here is talking about just the, or the plaintiff, I'd have to go back to the procedural thing. But the appellee here is talking about Roundabout as being the conclusive determinant in this case. Roundabout, they argue, supports their position. But I'm just looking at the policy itself. I mean, the business income is specified in Section O. We will pay for the actual loss of business income you sustain during the necessary suspension of your operations during the period of restoration. That makes no sense in the context of this case. Well, if I may, Your Honor, I don't think there's any dispute that there are situations in which there is, say, a noxious gas or an odor, which has been seen to constitute… That's different. That's different. That could be… Well, if I may, Your Honor, I'm pleased. We don't have that here. My understanding is your allegation is not that the gallery was full of COVID-19 germs, but that the governor issued orders preventing the gallery from opening. Absolutely, but I'm making a different point, Your Honor, which is Your Honor mentioned the period of restoration argument. And my point is there is a long line of cases which says odors and noxious gases, for example, do constitute physical loss or physical damage. And there is not necessarily going to be a period of restoration. That is, you can turn off the gas pipe. You can do various things, and that noxious gas is there. The fact that there is no period of restoration in this case, and we agree… No, I'm not talking about it from that perspective. I'm talking about it from the perspective of interpreting the policy and making it crystal clear that there's a sequence that the policy envisions, starting with direct physical damage or physical loss. And then suspension and restoration would follow that. And you don't have to restore a building if there's no direct physical loss. Because the policy itself says the suspension must be caused by direct physical loss of or physical damage to property at the scheduled premises. And I'm sorry. My point is, Your Honor, that if there is a gas leak, that has been deemed to be a physical loss or physical damage. And with that gas leak as fixed, there is no period of restoration. And my point is only that the lack of a period of restoration does not mean as a matter of policy interpretation that there cannot be a physical loss or damage. And indeed, we believe, and we set it forth in our papers, that this is yet another ambiguity. It's a potential period of restoration with no ending. You missed my point, then. You missed my point. Okay. Counsel, I have one other question about certification. Are there cases going up to the New York Court of Appeals, which are straight New York cases in New York courts, that can raise this question so that the New York Court of Appeals can speak? Because I think, again, there is a difference with respect to certification when it's a situation where unless we certify, New York can never speak to its own law. And cases where we are pretty clear as to what it is, and if we're wrong, New York will have a chance to tell us. But, you know, there are any number of cases where because of diversity or because of other things, unless we send it to them, New York never can speak to its law. Are there cases going up which are not diversity on which New York will be able to speak to this issue? And we have tried to keep, Your Honor, a pretty close tab of what is going on in these cases in New York and around the country. I don't have an exact answer to that. I don't know what is at the appellate division, if anything, at this moment. Obviously, this is the first case that this court has on this issue. But I just don't have the answer to that, Your Honor. Okay. The last to be ever said. And this is just Loehr, Mr. Galachewski. I just want to make sure that I understand the nub of the argument. I take it that you are arguing that physical loss and physical damage under the policy are, in effect, the same as loss of use of property. Is that correct? As to the first point, Your Honor, direct physical loss is loss of the use of property, among other things. So if that's the case, then what are we to make of the definitional section of the policy? And I don't know if you've got the record in front of you. You may not. But at JA98, there's a section called pollutants and contaminants. And it seems to it refers to, you know, different pollutants and contaminants, which means different materials that cause physical loss, physical damage or loss of use of property. And that suggests to me that those are three under the policy, different concepts. How do we how do we interpret that otherwise? You just told me that those are effectively, at least with respect to the reference to physical loss, that that is the same as loss of use of property. But this particular section in the definitional part of the policy separates those two concepts. It does, Your Honor, and I do have it in front of me, paragraph 15. It does. But I think this sort of cuts against Sentinel's position here is that they have every opportunity to define what direct physical loss and direct physical damage and loss of use of property could be. I mean, they had the ability to do that. Indeed, the district court in in holding that you are the person relying on the concept of loss of use of property, which does not appear in the coverage section. So you am I am I missing something beyond the argument you just made?  Among the among the give me one moment. Covered property is defined not merely as the gallery, but as property you own that is used in your business. That is what Sentinel has decided to define covered property at. The issue is the risk of loss, direct physical loss of covered property. I take the point that, well, loss of use of property should mean, if we look at paragraph 15 here, something different than direct physical loss. But I don't know what those definitions are. And indeed, to the extent that harm is physical harm is required to prove direct physical loss. The question is also, well, then what does direct physical damage require a different species of harm, a different type of damage? So you've reserved three minutes for rebuttal. Just hold on. I think you'll be able to listen in to Mr. Mr. Which way does that cut? Well, what it shows, Your Honor, and the more important point is what I'm going to get to next, which is every single New York court, state or federal, to look at this issue. We're talking about more than 25 of them at this point, and all agree that loss of use is not direct physical loss of physical damage to property. And they've all come to that same conclusion. And these are not one-page decisions. You have significant, voluminous decisions in some cases by a range of district court judges and New York Supreme Court judges and state court. It's a concrete decision. And in different departments of the New York state courts. The Supreme Court decisions in various departments across the state. But appellate division arguments? I'm sorry? Are there appellate division decisions? The appellate division decisions, of course, are roundabout. Roundabout, okay. There's no appellate division decisions post-COVID. But they are heading up to the appellate divisions in New York state and will ultimately get to the Court of Appeals if it wishes. So that the New York Court of Appeals will be able to tell us what New York law is. If they want to take them. If they don't want to take it, of course, it's because they don't want to take it and they're happy with what's happened below. Like all the New York courts, what's the discussion? That the issue is settled in New York by roundabout theater and that there's no need for them to take it. There's no sort of authority among the departments. What harm, given the fact that there are all these cases going up, would there be if we certified, making clear to the New York Court of Appeals that they don't need to take it? And how we will come out if they don't take it? What harm would there be in that? Wouldn't that be a faster way of getting the New York Court of Appeals' view? Well, I think there would actually be a few varieties of harm here in the Church Congress. The first one would, in fact, be the opposite of the notion of expedition. There would be delay in this case and all of the cases coming out of the district courts in this circuit that are called them out to this court right now. Because, as you know from the certified question, we're talking about a year and a half. Not necessarily. It doesn't take them that long to deny certification. New York courts are fast. Not as fast right now with their change of personnel, but they're pretty fast at deciding whether they want to take it. But I had made the argument the other side that there is here a problem that there are hundreds of these cases in district courts. If we're waiting even a few months for New York to tell us whether they're going to take it, that's going to slow every one of those cases down. I think, Your Honor, in terms of the other varieties of harm that would happen, there would also be harm to this court's case law talking about when certification is appropriate. How can we safely predict what the New York Court, if it were certified, or not if it were certified, but what the New York Court of Appeals will do? Because that's our job in this circumstance. Why don't you address the merits and why there's no possibility that the New York Court of Appeals could come to a different conclusion? Absolutely. And I think I want to get to the merits of the line of division. I want to get to the merits of the structure. And I want to get to the merits of the case law. Let me start with the case law. The first reason we can safely predict that the Court of Appeals would find that there's no direct physical loss of or damage to property by the near loss of use here is that Brownsville Court of Appeals says that. And there's no division of authority. And this Court's precedents say that there are no disagreements among the state court judges on the issue. There's no reason to turn to the Court of Appeals to ask for an answer to the right. So that's just a question, obviously, of the documents area of certification and of the necessary reliance on an intermediate appellate court decision when it's on point. On point and uncontested. Look, go back to the merits and not tell us when to certify or not, because there are plenty of cases where we've certified, where there were plenty of appellate court divisions, and we went to the New York Court of Appeals, and then the New York Court of Appeals took it and came out the other way. So tell us why this is so clear that we don't need to go. Absolutely, Judge Calabresi. One quick note before I do, which is to remind Your Honors of the Balls case from 2019, which says that there are constitutional implications in the question of certification because, in fact, takes away— Don't go that way. If you get me that way, you're going to get an opinion that tells you why that dicta is nonsense, which it is. That is called a cue, Mr. Freiman. It is. Let me turn to the language of the policy. I want to start with what Judge Walker was asking the opposing counsel about. This is on JA83. It's the business income provision. It's paragraph 01. And it says, in effect, the actual loss of business income is sustained due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or physical damage to property at the scheduled premises. Now, they're saying that the suspension of operations is direct physical loss. So that's entirely uncertain. They're saying that the suspension, that is, the direct physical loss, was caused by the direct physical loss. That's the theory. It makes no sense whatsoever. Direct physical loss means that there's something physical, something tangible, that has happened to the property. I was on the 838 Amtrak from New Haven here last night, hoping to get here on time for this morning's argument. We got stopped at about 1015 in the Bronx, where the Bronx means that you have to be, at a water-rising train stop. We were there for hours. I'm looking outside the window, and I'm seeing those floodwaters coming up. They were right there on the track between us and the broker. And I saw those waters, and I thought, there's floods. There's going to be physical damage to the property, all four years, with the insurers paying that. And for some of those businesses, those floods are going to require them to suspend their operations. There's a direct physical damage. In some cases, loss. Property washed away. Those people in the Bronx. Property washed away. Direct physical loss. The words direct and physical have meaning here. And this policy says, when that happens, when something like that happens, when there's direct physical loss or damage, you get these secondary layers of insurance. Business income, extra expense. Or if it happens nearby, in the immediate vicinity, civil authority. They're not stand-alone grants of insurance. They're not policies to protect against any kind of economic loss or damage. They're not the policies to cover something bad that might happen to my business. They're a property policy with a property trigger. I think it's important. I think Judge Calabresi may be new. Judge Walker may be new. Judge Moyer, I'm sorry, may be new. But someone asked about regulatory moves by the state. And can those really constitute direct physical losses? Look at a blue law. States used to have blue laws all the time. I grew up in New Jersey. You could buy almost everything on a Sunday. States could put blue laws back if they wanted to. Well, that's going to prohibit the use. That will prohibit the use of the guy having an art gallery on Sunday. New York State decided to do that. You can't sell art there. Is that a direct physical loss? No, it's a regulation. Like OSHA or environmental regulations, all sorts of things reduce business owners' income for one reason or another. That doesn't make them direct physical losses to property. That's what this policy requires. And there's no reason, going back to the question of Judge Calabresi, and he made a terrible correction, there's no reason to think that the New York court will kill us. We disagree with that basic notion, which ties into the very purpose of property insurance policy, one of the principles of insurance itself, which is to spread and price risk. And to spread and pricing risk. You say there is no case in New York that suggests at all the argument the other side is making with respect to this language. And that every case in New York that says there has to be a physical loss first that then gives rise to the other. Yes. Yes, Your Honor. I'm not aware of a single case that says a direct physical loss of property is satisfied by the notion that you've lost the use of your property. If you have a burger joint with only two employees and they both call in sick, your burger joint can't open that day, does that mean you've lost the property? You haven't lost the property, it's still there, you just can't open it. If there's going to be protests in the street, and the local officials are concerned that there's going to be violence, and they close the street for a moment, have you lost your property? Is there going to be a direct physical loss? No, there's going to be a government order saying we want to preserve safety. These state and local orders were meant to protect us. They're meant to protect our lungs. What the virus does, it presents a risk of harm to us, to our lungs. This courthouse closed. Look at the ceiling, look at these walls. The molding looks the same, the beautiful work on the ceiling looks the same, the rug is the same. The virus did not directly, physically damage this courthouse. The opposing council tries to make something about the fact that there's loss or damage. What's your answer to that? That you wouldn't use both if you meant the definition that you're giving us. There's no redundancy, and I'm happy to recognize that. Loss means that something is permanently dispossessed. That could be permanent displacement. Damage means that something is harmed, but it's still in your possession. So they serve completely different purposes. In my example of a flood last night, if you have a flood coming in, if it washed away some merchandise from a convenience store, and it just goes away in the flood, well, that's loss. On the other hand, if the floor has been hurt by the storm, that's damage to the floor. They serve entirely different purposes. So there are amici here who, if I read them correctly, are very concerned about a decision that's adverse to the gallery here. Can you just address those concerns? I assume you're talking about the restaurant industry? Yes. I mean, they have the general concerns that business owners across the United States have. I don't think they're unique to the restaurant industry. A lot of people have been hit hard by this virus, obviously. A lot of people lost their lives. A lot of people lost a lot of business. So their primary concern is that an adverse decision is not going to get you money. But, of course, as we point out in our brief, when you have a kind of nationwide disaster of the sort of global disaster of the sort that the coronavirus has caused, the appropriate response are governmental responses. We've had legislative responses, the CARES Act, the PPP loans, et cetera, et cetera, all sorts of debates in the halls of Congress and state legislatures about what's the right amount of relief for people who've been hurt because so many have. But that's not a warrant to change the language of insurance policies where the longstanding case law— So your answer suggests that this particular—the language of this policy is language that appears in many, many policies all throughout the country. This is very similar language. So this has got potentially the 11th and 8th Circuits, as you said, have dealt with precisely the same language? They have dealt with either identical or nearly identical language. And, in fact, if you look at those decisions, in the 8th Circuit decision in the Oral Search, for instance, they're interpreting Iowa law, but they rely on Minnesota law. And they're explicit about why they're doing that. They say the principles here are actually the same, right? These are contract principles, fundamentally. These are not specialized insurance principles. Let's look at the plain language of the policy and ask if it's clear. And they say it is—it's clear that loss of use is not covered in the 11th Circuit. The day before yesterday, Bill Gates was applying Georgia law. He says the same thing. Direct and physical have to have meaning. The other side just wants to erase them from the policy. Was I wrong or right to point out section 15—I think it was paragraph 15— of the pollutants section of the definition provisions? I think just really with anything, what that provision shows is that when the policy wants to say loss of use, it knows how to say loss of use. But that's not the trigger for the coverages that the plaintiff is seeking here. That trigger is direct physical loss of or physical damage to, not loss of use. And there's no allegation here that COVID itself, the germs themselves, caused any problem here. The allegation is that the governor issued orders. That's the reason for the loss of business. Yes, Your Honor. They did not allege the presence of viruses. I don't think that matters in the end, because as Judge Capone noted in the first decision to come out on this issue, the virus causes COVID-19 damage as long as it doesn't damage property. The odd thing about the restauranteur's brief is that when you have had in tort situations cases where there's been a catastrophe that is overwhelmingly great, if anything, the courts have taken away, even when the law suggested that there should be damages, to give it to something national. The Texas City disaster is an example of that, of saying this is too big to be handled by giving it to the insurance companies or the other. It can only be a national one. If anything, the fact that this is so great, counsels in your favor, quite apart from the fact that the language seems to support you. Perhaps, Your Honor. I would say we wouldn't need that. No, you don't. But we're talking amicus still. We're talking about amicus and we're talking about theory. Some of us deal in theory here. Thank you. Thank you very much. Mr. Galojewski, you've reserved three minutes for rebuttal. Are you still with us? I am, Your Honor, and thank you very much. And I certainly understand and appreciate why counsel wants to reference these other cases from around the country, but I think they're of limited applicability. If you look at the Gallerie case from Tuesday, and I quote, this is page, I'm sorry, page 5 of it. Is that the 11th Circuit decision? It is, Your Honor. Quote, at the very bottom, and the Georgia Court of Appeals has already explained the, quote, common meaning of, quote, direct physical loss or damage, holding that there must be, quote, an actual change in insured property that either makes the property unsatisfactory for future use or requires that repairs be made, citing Aflac Inc. v. Chubb. There is no such decision in New York. We are not talking about Georgia law or 11th Circuit law. We are talking about New York law. And indeed, the hypothetical used in Roundabout Theater that I referenced earlier, that loss or misplace, even a misplaced theater prop, could in fact constitute the inciting incident of a direct physical loss, not only cut totally against what Georgia says. But counsel, counsel, what do you do? I know we don't have a decision of the New York Court of Appeals, but what do you do with the fact that if we decided to certify, we would hold up all of these district court cases, all of the cases that are here now and dealing with this and create a tremendous amount of uncertainty during a certain time to get something about which everybody else who reads this language has read it in a way counter to yours, essentially. Well, I would suggest, Your Honor, and you ask counsel what the harm would be. I think the harm would be minimal. As Your Honor mentioned, this court can make very clear the direction that it is going. And if the New York Court of Appeals wants to agree, then they can quickly deny certification. If, however, they decide that even understanding what this court is saying, that certification is nevertheless appropriate, then I would submit that a delay, and I do not take it lightly, but that a delay would be necessary because the New York Court of Appeals believes that this is such an important issue that is affecting thousands of businesses in New York and throughout the country. So I believe that the harm of, as Your Honor suggested, perhaps indicating where this court is going but also requesting or submitting for certification, I believe the harm is minimal in that situation, Your Honor. Thank you. If I may, just on the last, counsel mentioned the burger joint that has two employees and they get sick. No one is claiming that that would be a physical loss because perhaps they had to close down here. The language is, we agree to pay for direct physical loss or physical damage to covered property caused by or resulting from a covered cause of loss. A covered cause of loss is a risk of direct physical loss, and we submit that an outbreak of COVID-19 in New York City, so serious to mandate government shutdown, that is a risk of a covered, a risk of direct physical loss. Unless the court has any questions, I have nothing else. Thank you very much, counsel. That concludes today's argument calendar. This will reserve decision in this matter, and I'll ask the clerk to adjourn court. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.